**Kurt ZEHNER, et al., Plaintiffs,**

v.

**Clarence TRIGG, et al., Defendants.**

**No. IP 93–1398–C–H/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 15, 1997.

John Emry, Indianapolis, IN, for plaintiffs.

Wayne E. Uhl, Office of the Attorney General, Indianapolis, IN, for all defendants.

### ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

HAMILTON, District Judge.

This case presents several issues concerning a new federal statute, section 803(d) of the Prison Litigation Reform Act of 1996, Public Law No. 104–134, 110 Stat. 1321 (1996). Section 803(d), codified as 42 U.S.C. § 1997e(e), is entitled "Limitation on Recovery." It consists of one sentence: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The plaintiff class in this case consists of offenders who were in the custody of the Indiana Department of Correction and who worked in a kitchen at the Indiana Youth Center in Plainfield, Indiana. Plaintiffs allege that while they worked in the kitchen, the defendant correction officials violated their Eighth Amendment rights by deliberately exposing them to asbestos. Plaintiffs do not seek injunctive relief, and they do not claim that the alleged exposure has caused any physical illness thus far.

Defendants have moved for judgment on the pleadings based on § 1997e(e). They contend that plaintiffs have not alleged a "physical injury" within the meaning of § 1997e(e), and therefore have failed to state a claim upon which relief may be granted. In response, plaintiffs contend: (1) they can meet the "physical injury" requirement of § 1997e(e); (2) at least some class members are not subject to § 1997e(e) because they were no longer prisoners by the time the complaint was filed; and (3) § 1997e(e) is unconstitutional. As explained below, the court finds that § 1997e(e) applies to bar all of these plaintiffs' claims and that it is constitutional as applied to plaintiffs' claims. Accordingly, defendants' motion for judgment on the pleadings must be granted and the action dismissed without prejudice. If any plaintiff actually develops a physical illness caused by the exposure to asbestos, that plaintiff may be able to bring a new action in the future.

### Background

Defendants' motion for judgment on the pleadings is reviewed under the same standards applied to a motion for failure to state a claim under Rule 12(b)(6). See, e.g., Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182–83 (7th Cir.1986); Paist v. Town & Country Corp., 744 F.Supp. 179, 181 (N.D.Ill.1990). The court must accept as true the complaint's "well-pleaded factual allegations" and draw "all reasonable inferences" in plaintiffs' favor. Chakonas v. City of Chicago, 42 F.3d 1132, 1134 (7th Cir.1994). Defendants are entitled to dismissal of a claim only if it appears beyond doubt that plaintiffs would not be entitled to relief under any set of facts that might be proved within the scope of the complaint's allegations. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); Chaney v. Suburban Bus Div. of Reg'l Transp. Auth., 52 F.3d 623, 626–27 (7th Cir.1995). A plaintiff may plead a conclusion in the complaint, and then, if the conclusion is questioned in a motion to dismiss or for judgment on the pleadings, the plaintiff may suggest a set of facts consistent with the allegations that would, if proven, establish the right to recover on the legal claim. Early v. Bankers Life and Cas. Co., 959 F.2d 75, 78–79 (7th Cir.1992).

In light of this standard, the following allegations are accepted as true. The Indiana Youth Center (IYC) operated a kitchen where food was prepared for inmates and employees. Plaintiffs, a class of inmates

at IYC, were employed at the kitchen, where they were deliberately exposed over a period of at least two years to friable asbestos. The defendants, all IYC officials, knew of the presence of asbestos, the dangers of asbestos, and plaintiffs' exposure to it. Under the policies and procedures of IYC and defendants, no inmate assigned to work in the kitchen could refuse the assignment. Some of the plaintiffs either complained directly to each defendant or else provided notice to them through grievances and letters. As of the time the complaint was filed, defendants had failed to remove, abate, or encapsulate the asbestos and had failed to remove plaintiffs from areas where they would be exposed to the asbestos.

On October 14, 1993, the named plaintiffs filed their class action complaint. The complaint alleges that defendants' actions amounted to cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. Plaintiffs also state that defendants were "deliberately and callously indifferent" to their serious medical needs. In addition to their federal Eighth Amendment claims, plaintiffs claim that defendants were negligent in violation of duties imposed under Indiana law. Plaintiffs seek damages pursuant to 42 U.S.C. § 1983 "to compensate them for their physical and mental injuries and for the deliberate injuries to their constitutional rights." Without objection from defendants, this court certified that the action be maintained as a class action under Fed.R.Civ.P. 23(b)(3) with the class defined as: "All offenders in the custody of the Indiana Department of Corrections who were employed in the 'old' kitchen or the tunnel under the 'old' kitchen at the Indiana Youth Center in Plainfield, Indiana, for a total of thirty days or more after October 14, 1991, through October 14, 1993."

On April 26, 1996, Congress enacted the PLRA as Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996). The PLRA includes a number of provisions limiting in various ways civil litigation filed by prisoners. The provision at issue here, § 803(d), amends 42 U.S.C. § 1997e by adding subsection (e), entitled "Limitation on Recovery." Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." On July 12, 1996, plaintiffs clarified that their injuries consist of "untold future physical injury and present mental pain and suffering," as well as "mental anguish and the fear of developing cancer, asbestosis or related asbestos exposure diseases and conditions." Pl.Prelim. Contentions, ¶¶ 10, 17. The court directed the parties to address the impact of § 1997e(e) on plaintiffs' claims. In response, defendants moved for judgment on the pleadings.

## Discussion

Apart from the effect of § 1997e(e), plaintiffs have stated a proper claim for relief under 42 U.S.C. § 1983. To maintain a cause of action for damages under § 1983, a plaintiff must allege each of the following elements: (1) a duty imposed by federal law on persons acting under color of state law to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the actor's breach of duty and the plaintiff's injury; and (4) actual damages. See *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985); accord, *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978) (damages are available under § 1983 for actions found to have violated "constitutional rights *and to have caused compensable injury*") (emphasis in original). Plaintiffs have satisfied the requirements of § 1983 in their complaint. The Eighth Amendment imposes on prison officials a duty to maintain "humane conditions of confinement," including adequate food, clothing, shelter, medical care, and prisoner safety. *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). In order for a plaintiff to state a claim alleging a violation of his or her Eighth Amendment rights, the plaintiff must allege both an objective component—that the conditions amounted to cruel and unusual punishment—and a subjective component—that the defendant acted with at least "deliberate indifference" to the harm. *Id.* at ——, 114 S.Ct. at 1977. Plaintiffs here

have alleged both. The complaint further alleges that defendants caused plaintiffs "physical and mental injuries." Defendants' motion for judgment on the pleadings asserts that plaintiffs have not alleged any physical injuries within the meaning of § 1997e(e) and therefore cannot recover damages for any mental or emotional injuries. The court will consider first the issues of statutory interpretation concerning the extent to which § 1997e(e) applies to these plaintiffs' claims. The court will then turn to the constitutional issues presented by application of the statute to their claims.[1]

I. *"Physical Injury" Requirement of 42 U.S.C. § 1997e(e).*

■ Section 1997e(e) provides in full: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiffs' complaint refers to "physical and mental injuries," but their contentions and brief make clear that they "are only claiming damages for mental and emotional injuries." Pl.Br. at 1; accord, *id.* at 12 ("Because of the nature of asbestos ..., the physical harm will occur, arguably, 20 to 30 years after the emotional harm was done."). Nevertheless, plaintiffs contend they have satisfied the "physical injury" requirement in § 1997e(e) because they have alleged and will "show that they were exposed to friable asbestos." Pl.Br. at 16.[2]

Plaintiffs argue that inhaling or ingesting asbestos particles is a physical "impact" that meets the "physical injury" requirement in § 1997e(e). *Id.* The argument is not persuasive. Assuming that inhaling or ingesting asbestos particles is a physical "impact," the terms "impact" and "injury" are not synonymous, especially in this area of the law. The term "physical impact" comes from one of the major common law tests for evaluating claims alleging negligent infliction of emotional distress. As the Supreme Court has explained: "Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical *impact* (no matter how slight) *or injury* due to the defendant's conduct." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, ——, 114 S.Ct. 2396, 2406, 129 L.Ed.2d 427 (1994) (emphasis added). As the language in *Gottshall* reflects, the distinction in tort law between "impact" and "injury" is well established. For example, the Supreme Court of Indiana recently described and overruled Indiana's "long-standing and well-established rule" concerning the recovery of damages for mental or emotional distress: damages were recoverable only when the distress was accompanied by and "results from a physical *injury* caused by an *impact* to the person seeking recovery." *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind.1991) (emphasis added); see also *Kapoulas v. Williams Ins. Agency*, 11 F.3d 1380, 1385 (7th Cir.1993) (concluding that Illinois law allows recovery for "emotional distress resulting not only from an *injury*, but also emotional distress resulting merely from the *impact* ") (emphasis added).

Several courts have held that mere exposure to asbestos or other hazardous substances is not itself a physical injury. See, e.g., *Puthe v. Exxon Shipping Co.*, 2 F.3d 480, 484 (2d Cir.1993) (collecting cases that reject emotional distress claims based on exposure to asbestos where plaintiffs did not allege or show physical injury); *Ball v. Joy Techs., Inc.*, 958 F.2d 36, 38–39 (4th Cir.1991)

---

1. The Prison Litigation Reform Act contains no effective date provision, and nothing in the section amending 42 U.S.C. § 1997e(e) expressly prescribes its reach. The parties' briefs assume that § 1997e(e) does apply to cases pending on the date of the PLRA's enactment; plaintiffs have not argued to the contrary.

2. In theory, it might have been possible for plaintiffs to defeat the motion for judgment on the pleadings by merely pointing to the phrase "physical and mental injuries" in the complaint. Plaintiffs have made it clear to defendants and to the court, however, that they do not seek to prove that any class member currently suffers from any physical malady or symptoms caused by the alleged exposure to asbestos. The candor of plaintiffs and their counsel on this point avoids a significant waste of time and money by the parties, their counsel and the court. This approach is entirely proper, and the court will address the legal issues as presented by the motion for judgment on the pleadings.

(collecting cases from jurisdictions holding that "exposure to hazardous substances does not constitute a physical injury"); see also *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir.1996) (noting that plaintiffs have difficulty meeting "commonality" requirement under Fed.R.Civ.P. 23(a)(2) because, although all plaintiffs have been exposed to asbestos, some have suffered "no physical injury" while others suffer from cancer or asbestosis).

Plaintiffs rely on *Eagle–Picher Indus., Inc. v. Cox*, 481 So.2d 517 (Fla.App.1985), and *Devlin v. Johns–Manville Corp.*, 495 A.2d 495 (N.J.Super.1985). These cases do not support plaintiffs' contention that "impact" and "injury" are the same and that inhalation of asbestos particles is therefore a physical injury. In *Cox*, the Florida appeals court determined that although inhalation of asbestos is a physical *impact*, recovery for emotional distress is "available only to those who have suffered a physical injury." 481 So.2d at 527. The court concluded that the plaintiff met the physical injury requirement because she "manifested the physical disease of asbestosis." *Id.* at 529. Similarly, in *Devlin*, the New Jersey court determined that the plaintiffs' asbestosis—not their mere exposure to asbestos—satisfied the physical injury requirement. 495 A.2d at 499. Plaintiffs also cite *Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315 (5th Cir.1986), and imply that *Hagerty* did not recognize a distinction between "impact" and "injury." Actually, *Hagerty* frequently referred to "injury" and "impact" as separate concepts. See 788 F.2d at 318. There, the plaintiff had been completely drenched with dripolene, a toxic chemical. The Fifth Circuit concluded that the drenching was an "impact," *id.* at 318 n. 1, and that the plaintiff's subsequent dizziness, leg cramps, and stinging sensation in his extremities showed a "physical injury." *Id.* at 317.

The plain meaning of the word "injury" is consistent with this well-established distinction in tort law between "impact" and "injury." The term is also consistent with the numerous cases holding that mere exposure to asbestos or other hazardous substances is not a physical injury for purposes of recovering damages for emotional distress under state tort law. Accordingly, the term "physical injury" in § 1997e(e) is not broad enough to encompass mere inhalation or ingestion of asbestos particles without proof of resulting disease or other adverse physical effects. Plaintiffs have not pleaded a "physical injury" within the meaning of § 1997e(e) so that they could recover damages for mental or emotional injuries.[3]

## II. Application of 42 U.S.C. § 1997e(e) to Actions Brought by Former Prisoners.

Again, § 1997e(e) provides: "No Federal civil action may be brought by a *prisoner* confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Emphasis added.) Some of the members of the plaintiff class in this case are still prisoners. Some have been released from prison. Plaintiffs argue that at least some of the class members' claims survive § 1997e(e) because the statute applies only to actions "brought by a prisoner" and not to actions brought by persons who are no longer "prisoners" at the time they bring their actions, even if their claims are for injuries suffered while in custody. Defendants contend that, in light of Congress's intent to curb frivolous lawsuits, the only common sense reading of the statute is that it "applies to claims arising during custody, regardless of the status of plaintiff when the suit is filed." Def.Br. at 13.

Plaintiffs argue that the plain language of the statute shows they are correct. Section

---

**3.** Section 1997e(e) requires a "prior showing of physical injury." The statute does not indicate whether the "showing" must be prior in time, so that it must somehow be made before filing a federal civil action or, if so, in what manner or in what forum such a showing would have to be made. Although several other interpretations can be imagined, the more sensible interpretation of this unusual statutory phrase would seem to require only a logical priority, so that a prisoner could not recover damages for mental or emotional injury unless the plaintiff could also prove physical injury from the defendant's wrong. Because plaintiffs do not satisfy the "physical injury" requirement, the court need not decipher in this case precisely what Congress meant by requiring a "prior showing" of physical injury.

1997e(h) defines the term "prisoner" to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." The definition seems to refer to a person's present status, and § 1997e(e) is already limited to claims for injuries "suffered while in custody." On this basis, plaintiffs contend that the use of the term "prisoner" (rather than "person") would add nothing to the meaning of § 1997e(e) if it did not limit the statute's reach to persons who are still prisoners at the time suit is filed. While those points support plaintiffs' interpretation of the statute, the language is not so clear and specific concerning the issue presented here as to resolve the dispute definitively. The language is certainly not so clear that the court must accept plaintiffs' interpretation without considering the logic and consequences of the proposed interpretation or the broader purposes of the PLRA. Similarly, the statutory language alone does not require the defendants' interpretation. The language of § 1997e(e) is ambiguous with respect to its application to civil actions filed by persons who are no longer prisoners at the time they file their actions.

To deal with such statutory ambiguities, the courts look for guidance from many sources, including legislative history, the broader purposes of the legislation at issue, including evidence of the limitations and compromises made in Congress, as well as common sense and the practical implications of the alternative interpretations. See, e.g., *Toibb v. Radloff*, 501 U.S. 157, 161, 111 S.Ct. 2197, 2199, 2200, 115 L.Ed.2d 145 (1991) (courts look first to statutory language and then to legislative history if statutory language is unclear); *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."); *Commissioner of Internal Revenue v. Asphalt Prods. Co.*, 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97 (1987) ("Judicial perception that a particular result would be unreasonable may enter into construction of ambiguous statutory provisions, but cannot justify disregard of what Congress has plainly and intentionally provided."); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible."); *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 271–73 (7th Cir.1986) (where parties offer reasonable, but conflicting, interpretations of a statute's plain meaning, courts may base their conclusions on legislative history and common sense). Applying § 1997e(e) to claims arising during custody, regardless of the plaintiff's status at the time the action is filed, is the more sensible and logical interpretation. It is more consistent with the purposes of § 1997e and the PLRA as a whole, and more closely in accord with the courts' duty to construe statutes in such a way as to avoid serious potential constitutional problems. Plaintiffs' interpretation would tend to encourage delay in civil litigation and in some cases would require courts to hear at separate times, in separate actions, the same plaintiff's claims for injunctive relief (while still a prisoner) and for damages (after release). There is no apparent policy reason why Congress might have chosen to limit § 1997e(e) to claims brought by plaintiffs who were still in prison when they filed the complaint.

Although the legislative history regarding the PLRA is sparse, Congress's general purpose in passing the act is relatively clear. According to Senator Hatch, the PLRA "will help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits.... Our legislation will also help restore balance to prison conditions litigation and will ensure that Federal court orders are limited to remedying actual violations of prisoners' rights...." 141 Cong.Rec. S14408–01, *S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch). See also 141 Cong.Rec. S7498–01, *S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl) (PLRA "will deter frivolous inmate lawsuits. Statistics compiled by the Administrative Office of the U.S. Courts show that inmate suits are clogging

the courts and draining precious judicial resources"); *id.,* at *S7524 (statement of Sen. Dole) ("Frivolous lawsuits filed by prisoners tie up the courts, waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law-abiding population.").

The legislative history contains virtually no discussion specifically concerning the provision here, § 803(d) of the PLRA, 42 U.S.C. § 1997e(e). There is no indication in the legislative history that Congress actually considered the question of former prisoners when it drafted this sentence in a way that created this ambiguity concerning suits by former prisoners. The original draft of what would become § 1997e(e) offers no insight into this issue. As originally drafted, the bill would have limited recovery in civil actions brought "by an adult convicted of a crime confined in a jail, prison, or other correctional facility." S. 866, 104th Cong. § 7A (1995). By the time of enactment the language was broadened to apply to any "prisoner," which is defined in the statute to mean "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

Statements in debates regarding the broader goals of the PLRA similarly do not resolve the question of Congressional intent in using the term "prisoner." For example, Senator Kyl made comments indicating that the focus of the PLRA was on suits by prisoners rather than suits concerning prisoners' rights: "Today's system seems to encourage prisoners to file with impunity. After all, it's free. And a courtroom is certainly a more hospitable place to spend an afternoon than a prison cell." 141 Cong. Rec. S14408–01, *S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Kyl). Senator Kyl also quoted Justice Rehnquist's dissenting opinion in *Cleavinger v. Saxner,* 474 U.S.

193, 211, 106 S.Ct. 496, 506, 88 L.Ed.2d 507 (1985): "With less to profitably occupy their time than potential litigants on the outside, and with a justified feeling that they have much more to gain and virtually nothing to lose, prisoners appear to be far more prolific litigants than other groups in the population." 141 Cong.Rec. S7498–01, *S7527 (daily ed. May 25, 1995) (statement of Sen. Kyl). These comments show that the drafters of § 1997e(e) were concerned primarily with suits filed by prisoners, but these comments are too thin a reed to indicate any intention on the part of Congress to draw a line between prisoners and former prisoners for claims arising while in custody. The explicit focus on suits filed by prisoners is not at all inconsistent with an intention to reach a little more broadly to include suits filed by former prisoners who have been released before the statute of limitations had run on their claims arising in custody.[4]

Ultimately, common sense and the overall purposes of the PLRA favor application of § 1997e(e) to actions brought by former prisoners. At the most general level Congress intended to curb frivolous suits arising in prison. At a more specific level, by enacting § 1997e(e), Congress took a page from the common law by limiting claims for mental and emotional injuries, which can easily be feigned or exaggerated, in the absence of physical injury. See *Price v. City of Charlotte,* 93 F.3d 1241, 1250 (4th Cir.1996) ("Traditionally, common law courts have been reticent regarding compensatory damages for emotional distress in the absence of physical injury.... Not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims."). It is difficult to see how that purpose would be furthered by a statute merely requiring prisoners to wait until they are released from custody before filing suit on claims for mental or emotional injury unaccompanied by physical injury. Plain-

---

4. In fact, by its terms, § 1997e(e) covers a broader class of persons than just inmates in prison. It also covers pre-trial detainees, to whom Senator Kyl's remarks seem inapplicable. Significantly, this broad class of persons was not included in the original bill, which covered only adults "convicted of a crime." S. 866, 104th

Cong. § 7A (1995). This change in the proposed language provides some further (albeit slight) indication that § 1997e(e) as enacted was concerned primarily with suits "arising in custody" rather than with the status of the plaintiff at the time suit is filed.

tiffs' interpretation would permit a claim to survive § 1997e(e) if the prisoner-plaintiff were released before the statute of limitations had run on his or her claim for mental or emotional injury. As to those claims, plaintiffs' interpretation would actually encourage delay in filing civil litigation. That would surely be a perverse result not intended by Congress in legislation intended to relieve the courts and other litigants of the burdensome consequences of litigation that is often, but by no means always, frivolous.

Plaintiffs' interpretation would also tend to multiply litigation in cases where a prisoner had been released. In those cases, plaintiffs would be forced to separate their claims for injunctive relief and for damages into two separate actions that the courts would have to consider at two different times. A prisoner who has suffered injury in custody may be entitled to injunctive relief to prevent further harm, and § 1997e(e) has no effect on such claims for injunctive relief. The release of the plaintiff-prisoner virtually always moots that plaintiff's claims for injunctive relief concerning prison conditions, so any such relief must be sought, if at all, while the plaintiff remains in prison. Under plaintiffs' interpretation of § 1997e(e), however, a plaintiff who successfully obtained injunctive relief while in prison would be able to bring a separate action after release (but *only* after release) to obtain damages for mental or emotional injury. That scenario makes no sense and would certainly conflict with the overall goals of the PLRA.

Permitting actions by former prisoners for mental or emotional injury would also create arbitrary distinctions between prisoners based solely on their release dates. Under plaintiffs' proposed construction of the statute, the law would treat differently two prisoners whose rights were violated at the same time, by the same prison official, where one prisoner was released from prison the day before the statute of limitations ran and the other was released the day after the statute ran. Although Congress used language in § 1997e(e) that might permit that result, it is difficult to see why Congress might have wanted to treat those two cases differently, allowing one to proceed and barring the other. The effect of this construction would be to create two classes of prisoners—those who expect to be released within the statutory limitation period for actions for personal injury, and those who do not. One class would be able to sue for damages for emotional injuries and the other would not.[5]

Although the language of § 1997e(e), read in a vacuum, could support plaintiffs' interpretation, courts interpreting ambiguous statutes must exercise common sense and try to avoid results that would be absurd or thwart the obvious purpose of the statute. See, e.g., *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) (warning "against the dangers of an approach to statutory construction which confines itself to the bare words of a statute"); *United States v. Brown*, 333 U.S. 18, 25–26, 68 S.Ct. 376, 379–80, 92 L.Ed. 442 (1948) ("The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language."). Absent a clear declaration to the contrary, it is highly unlikely that Congress intended § 1997e(e) to apply only to actions filed by persons who are still incarcerated at the time they file an action to seek damages for mental or emotional injury suffered in custody.[6]

---

**5.** In this scenario, plaintiffs' interpretation of § 1997e(e) might also tend to encourage some cynical and Machiavellian calculations by prison staff, who are the defendants in most civil actions that will be subject to § 1997e(e). Prison staff can affect a prisoner's release date through, for example, disciplinary proceedings that affect the prisoner's rating for earning time toward release. (In Indiana, for example, prisoners who comply with prison discipline requirements usually earn two days of credit toward release for each calendar day in prison.) Under plaintiffs' interpreta-

tion of § 1997e(e), some potential defendants would have incentives to manipulate a potential plaintiff's release date in order to prevent the potential plaintiff from filing an action before the statute of limitations had run.

**6.** In *Robbins v. Switzer*, 104 F.3d 895, 897–98 (7th Cir.1997), the Seventh Circuit held that different provisions of the PLRA, which amended 28 U.S.C. § 1915(a)(2) & (b), do not apply to a prisoner released before his or her appeal is filed. The statutory provisions at issue in *Rob-*

In reaching this conclusion, the court is also mindful of the doctrine that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 628–29, 113 S.Ct. 2264, 2282–83, 124 L.Ed.2d 539 (1993); accord, *Batanic v. INS*, 12 F.3d 662, 666 (7th Cir.1993). Here, "serious constitutional problems" might arise if the courts were to adopt plaintiffs' construction of the statute. Consider the example above: a state prison official violates the constitutional rights of two inmates in the same way at the same time. Neither suffers a physical injury; the only difference between the two inmates is that one will be released a day before the statute of limitations expires and one will be released the day after. Under plaintiffs' reading of the statute, the first prisoner will be able to file a suit for emotional injuries under § 1983 and the other will not. Even under the deferential "rational relationship" level of equal protection scrutiny, this scenario would raise serious equal protection problems.

█ In light of all these considerations, the court concludes that § 1997e(e) applies to suits by prisoners arising while the prisoner is in custody, regardless of whether the prisoner is released prior to commencing a civil action. Accordingly, because § 1997e(e) applies to plaintiffs' claims in this case, their claims must be dismissed unless the statute is unconstitutional as applied here. Such dismissal must be without prejudice. If a member of the plaintiff class later develops a disease caused by the exposure to asbestos, that person would then appear to be able to satisfy the physical injury requirement of § 1997e(e).

*bins* deal with payment of filing fees in the district courts and courts of appeals. The terms in § 1915(a)(2), (b)(1), and (b)(2) concerning a prisoner's "trust fund account statement (or institutional equivalent)" would make no sense as applied to former prisoners. In that statutory context, which regulates court filing fees when litigants seek to proceed *in forma pauperis*, the plaintiff's status at the time of filing is obviously

### III. Constitutional Challenges to 42 U.S.C. § 1997e(e).

Much of plaintiffs' response to the PLRA consists of vigorous criticism of the policy decisions made by Congress to restrict civil litigation by prisoners. The issue here is not whether the PLRA reflects wise public policy or is well designed to achieve its purposes. The issue here is also not whether the PLRA in general or even § 1997e(e) in particular might be constitutional as applied to all conceivable cases. The issue here is whether § 1997e(e) is constitutional as applied to this case.

### A. Congressional Power to Restrict Remedies for Constitutional Violations.

█ Plaintiffs argue first that, by enacting § 1997e(e), Congress has overstepped its power by stripping the federal courts of their remedial authority to such an extent that courts can no longer effectively vindicate prisoners' constitutional rights. Defendants respond that Congress has merely amended 42 U.S.C. § 1983, a statute of its own creation, to cut off one category of remedies otherwise available for some types of claims that arise in prisons and jails. This, defendants contend, is well within the legislative power of Congress. At least as applied to this case, this court agrees with defendants that the enactment of § 1997e(e) has not impermissibly exceeded the legislative power of Congress.

Before the enactment of § 1997e(e), no clear requirement existed that a plaintiff show a physical injury under § 1983 before recovering damages for cruel and unusual punishment. Section 1983 creates "a species of tort liability" in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution and laws of the United States. *Memphis Community*

the relevant concern. The same is not true of the term "prisoner" as used in 42 U.S.C. § 1997e(e), which governs the types of damages available for injuries occurring in custody. In this context, the plaintiff's status at the time of the alleged injury is relevant, and there is no reason to believe Congress intended that the plaintiff's status at the time the action was filed should control the available damages.

*Sch. Dist. v. Stachura,* 477 U.S. 299, 305–06, 106 S.Ct. 2537, 2541–43, 91 L.Ed.2d 249 (1986), quoting *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). "Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Stachura,* 477 U.S. at 306, 106 S.Ct. at 2542. To obtain an award of compensatory damages under § 1983, a plaintiff must show that he or she has suffered an actual injury and that there is a causal connection between that injury and the deprivation of a federal right caused by the defendant. *Carey v. Piphus,* 435 U.S. at 262–64, 98 S.Ct. at 1051–53; see also *Stachura,* 477 U.S. at 307, 106 S.Ct. at 2543; accord, *Babcock v. White,* 102 F.3d 267, 270–71 (7th Cir.1996). In *Carey,* the Supreme Court held that mental and emotional distress can constitute compensable injury in § 1983 cases. 435 U.S. at 264, 98 S.Ct. at 1052–53.[7]

Plaintiffs' constitutional argument is based on the premise that the Constitution requires that a plaintiff who proves a constitutional violation be entitled to damages for emotional injuries suffered as a result of that violation. If the Constitution itself requires such a remedy, it would follow, Congress may not prohibit such a remedy by enacting a statute.

This implicit foundation for plaintiffs' argument implicates questions at the heart of the federal constitutional system. Article III of the Constitution vests the judicial power of the United States in the federal courts. Congress could not pass a valid statute stating that certain conduct does not violate the Constitution. Such a statute would violate the separation of powers by preventing the judiciary "from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of General Servs.,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). With § 1997e(e), Congress has not attempted directly to define what conduct violates or does not violate the Eighth Amendment. Rather, § 1997e(e) restricts the remedies available under § 1983 for some violations of federally protected rights, including rights under the Eighth Amendment. However, that fact does not necessarily decide the constitutional issue.

Plaintiffs contend that the restriction of remedies for constitutional wrongs can violate the constitutional separation of powers: "[W]here constitutional rights are at stake and where Congress leaves the federal courts with authority to grant only plainly inadequate relief, it has set itself against the Constitution." Pl.Br. at 13, quoting Lawrence G. Sager, *Constitutional Limitations on Congress' Authority to Regulate the Jurisdiction*

---

7. In *Babcock,* however, the Seventh Circuit cast doubt on the availability of damages for emotional harm caused by the fear of a future injury in "conditions of confinement" cases. There, the plaintiff sought damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing suits for damages against federal officials for violations of the Constitution), for emotional injury suffered as a result of the defendants' alleged exposure of the plaintiff to attacks by fellow inmates who the defendants knew posed a danger to the plaintiff. *Babcock,* 102 F.3d at 270. The plaintiff was never actually attacked. The Seventh Circuit found this fact decisive in holding that while a plaintiff may recover damages under the Eighth Amendment for "failure to prevent harm," the plaintiff may not recover for the mere "failure to prevent exposure to risk of harm." *Id.* at 271–72. The panel in *Babcock* limited its holding "to allegations that prison officials exposed an individual prisoner to a risk of violence at the hands of other inmates," and specifically noted that it did not "intend to preclude suits by prisoners

under the Eighth Amendment grounded solely on claims of psychological injury." *Id.* at 272–73. For example, the court cited Justice Blackmun's example in *Hudson v. McMillian,* 503 U.S. 1, 16, 112 S.Ct. 995, 1004, 117 L.Ed.2d 156 (1992) (Blackmun, J., concurring)—psychological injury resulting from a prison guard's placing the muzzle of a revolver inside an inmate's mouth—as an example of an injury severe enough to recover damages under the Eighth Amendment. *Babcock,* 102 F.3d at 273–74. Nevertheless, the court's analysis indicates that where a defendant deliberately exposes a plaintiff to a risk of future harm, the exposure itself does not—or, at least, does not always—entitle the plaintiff to compensation for his or her psychological distress caused by the fear of the future harm. See *id.* at 271–72. See also *Fontroy v. Owens,* No. CIV. A. 86–4958, 1996 WL 571149 (E.D.Pa. Oct. 2, 1996) (applying principles of Pennsylvania law and concluding that § 1983 does not permit recovery of damages for emotional harm suffered by prisoner as a result of asbestos exposure, absent a consequent physical illness).

*of the Federal Courts,* 95 Harv.L.Rev. 17, 88 (1981); accord, *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. * * * The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right. If this obloquy is to be cast on the jurisprudence of our country, it must arise from the peculiar character of the case."). Congress may not effectively nullify the rights guaranteed by the Constitution by prohibiting all remedies for the violation of those rights. See *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (requiring clear expression of congressional intent to preclude judicial review of constitutional claims; "We require this heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."); cf. *id.* at 613, 108 S.Ct. at 2059 (Scalia, J., dissenting) ("it is simply untenable that there must be a judicial remedy for every constitutional violation"). This general principle is implicit in the Supreme Court's decisions upholding some limitations on remedies because other remedies remain available, and rejecting other limitations on remedies where no others are available. See, *e.g., Reich v. Collins,* 513 U.S. 106, ——, 115 S.Ct. 547, 549, 130 L.Ed.2d 454 (1994) (where unconstitutional state taxes are exacted by compulsion, denial of recovery by state court violates due process clause); *Chappell v. Wallace,* 462 U.S. 296, 302–03, 305 n. 2, 103 S.Ct. 2362, 2366–67,

2368 n. 2, 76 L.Ed.2d 586 (1983) (refusing to allow *Bivens* actions by military personnel against superior officers but noting statutory provisions for redress); *Harlow v. Fitzgerald,* 457 U.S. 800, 819 n. 34, 102 S.Ct. 2727, 2739 n. 34, 73 L.Ed.2d 396 (1982) (qualified immunity from liability for damages does not preclude suits for injunctive or declaratory relief).

At the same time, however, the law does not require an individually effective remedy—and certainly not a damages remedy—for every constitutional violation. Apart from the examples of political questions committed to other branches of government, the doctrines of sovereign immunity, Eleventh Amendment immunity, and qualified and absolute immunity for individual government officials can all be applied to defeat an individual plaintiff's claim for damages. In addressing other recent legislation, the Seventh Circuit explained in *Lindh v. Murphy:* "Even for claims based on the Constitution, there may be rights without remedies.... Regulating relief is a far cry from limiting the interpretive power of the courts...." 96 F.3d 856, 872 (7th Cir.1996) (*en banc*), *cert. granted,* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). In suits under § 1983, "courts frequently rule for the defendant even though the plaintiff may be right on the merits." *Id.* at 873. If the law were otherwise, the doctrines of qualified and absolute immunity, which are literally daily fare for the federal courts in actions under § 1983, would themselves be unconstitutional. The combination of these doctrines may effectively defeat a damages remedy for a plaintiff whose rights have been violated, but they do not foreclose the right to injunctive and declaratory relief.[8]

---

**8.** Professors Fallon and Meltzer have argued that, at least for purposes of describing the current state of the law, "doctrines barring individual remediation in some cases suggest that *Marbury's* promise of a remedy for every rights violation is better viewed as a flexible normative principle than as an unbending rule of constitutional law," but that a "rock-bottom constitutional principle requires a scheme of constitutional remedies sufficient to keep government tolerably within the bounds of law." Richard H. Fallon, Jr., *Some Confusions About Due Process, Judicial Review, and Constitutional*

*Remedies,* 93 Colum.L.Rev. 309, 338 (1993), summarizing Richard H. Fallon, Jr. & Daniel J. Meltzer, *New Law, Non–Retroactivity, and Constitutional Remedies,* 104 Harv.L.Rev. 1733, 1787–91 (1991). See also Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L.Rev. 1362, 1366–74 (1953). In this sensitive area of the separation of powers, the requirement of "remedies sufficient to keep government tolerably within the bounds of law" may be as precise a statement as is possible.

Congress is itself not completely prohibited from legislating restrictions on the statutory remedies for constitutional violations; the creation of a statutory remedy for the violation of constitutional rights is not a one-way ratchet that can never be restricted. The Supreme Court has not held that the damages remedies provided by § 1983 are mandated by the Constitution. Cf. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 314–15, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987) (just compensation clause of Fifth Amendment is self-executing, so that obligation to pay compensation requires no statutory creation of remedy). In fact, the Supreme Court has repeatedly recognized that the remedies available under § 1983 are matters of statutory creation. That reasoning plainly implies that Congress is free, under the Constitution, to modify or restrict those remedies. For example, in *Carey v. Piphus,* the Supreme Court noted that the "Members of the Congress that enacted § 1983 did not address directly the question of damages, but the principle that damages are designed to compensate persons for injuries caused by the deprivation of rights hardly could have been foreign to the many lawyers in Congress in 1871." 435 U.S. at 255, 98 S.Ct. at 1048. In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court considered whether local governments could invoke some form of qualified immunity in § 1983 suits. In concluding that they could not, the Court stated:

we can discern no "tradition so well grounded in history and reason" that would warrant the conclusion that in enacting § 1 of the Civil Rights Act [codified as 42 U.S.C. § 1983], the 42d Congress *sub silentio* extended to municipalities a qualified immunity based on the good faith of their officers. *Absent any clearer indica-*

*tion that Congress intended so to limit* the reach of a statute expressly designed to provide a broad remedy for violations of federally protected civil rights, we are unwilling to suppose that injuries occasioned by a municipality's unconstitutional conduct were not also meant to be fully redressable through its sweep.

445 U.S. at 650, 100 S.Ct. at 1415 (emphasis added; citation omitted). Even the doctrines of qualified and absolute immunity under § 1983 are based not on constitutional law but on the courts' interpretation of Congress's intent in enacting § 1983. See, *e.g., Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); see also *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 263–65, 101 S.Ct. 2748, 2757–59, 69 L.Ed.2d 616 (1981) (analyzing legislative history and concluding that, since municipal immunity from punitive damages was well established at common law by 1871, "Congress would have specifically so provided that had it wished to abolish the doctrine") (citations omitted); see generally *State of Maine v. Thiboutot,* 448 U.S. 1, 8, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980) (noting that Congress "has remained quiet in the face of our many pronouncements on the scope of § 1983").[9]

Plaintiffs are correct in recognizing that, as stated by the Supreme Court, a "damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees." *Owen v. City of Independence,* 445 U.S. at 651, 100 S.Ct. at 1415. However, the Court made this observation as part of an exercise in statutory interpretation. It did not suggest or imply in *Owen* that the damages remedies provided under § 1983 are themselves required by the Constitution.

The court takes as a given the premise that the Eighth Amendment may be violated by deliberate, cruel infliction of psychological

**9.** This case does not present the question of the statute's possible application to claims brought pursuant to *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for damages against persons acting under color of federal law. *Bivens* claims occupy an unusual place in the logic of the law, for the Supreme Court found in *Bivens* itself that the damages remedy against individual federal offi-

cials (parallel to § 1983) should be implied from the Constitution itself, but has recognized the power of Congress to restrict that remedy by legislation. See *Bush v. Lucas,* 462 U.S. 367, 376–78, 103 S.Ct. 2404, 2410–12, 76 L.Ed.2d 648 (1983). As discussed below at page 32, it is not clear whether section 1997e(e) applies to *Bivens* claims.

harm, without accompanying physical injury. See *Hudson v. McMillian*, 503 U.S. 1, 17, 112 S.Ct. 995, 1004–05, 117 L.Ed.2d 156 (1992) (Blackmun, J. concurring) ("psychological pain can be more than *de minimis*," and "often may be clinically diagnosed and quantified through well-established methods, as in the ordinary tort context where damages for pain and suffering are regularly awarded"). Justice Blackmun cited a stark example from *Wisniewski v. Kennard*, 901 F.2d 1276, 1277 (5th Cir.1990), where evidence showed that after an escaping prisoner was captured, a deputy sheriff handcuffed him, then put the muzzle of his revolver in the prisoner's mouth, with the hammer pulled back, and threatened to "blow his head off." Applying the "serious injury" requirement later rejected in *Hudson v. McMillian*, the Fifth Circuit majority affirmed summary judgment for the defendants.

The issue here is not whether psychological harm caused by deliberate indifference to potential dangers of deliberate cruelty violates the Eighth Amendment. The narrower issue is whether the Eighth Amendment requires that damages for psychological harm be available as a remedy against those persons acting under color of state law who inflict such harm. In light of the well-established doctrines of qualified and absolute immunity under § 1983, such a damages remedy cannot be constitutionally required in all cases. Other remedies—especially injunctive relief backed up with meaningful sanctions for contempt—are available to courts to vindicate constitutional rights even where damages may not be available. There is a point beyond which Congress may not restrict the availability of judicial remedies for the violations of constitutional rights without in essence taking away the rights themselves by

rendering them utterly hollow promises. That point has not been reached by enactment of § 1997e(e) as applied here.

In addition to Congress's inherent power to limit the remedies available under the statutes it enacts, it is also highly relevant here that the limit imposed by § 1997e(e) is comparable to a limit long recognized in the common law of torts. Section 1983 was intended to create a species of tort liability in favor of persons deprived of their constitutional or other federal rights. *Carey*, 435 U.S. at 253, 98 S.Ct. at 1046–47; *Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir.1983) (a damage suit under § 1983 is a "tort damage action even though the duty the defendant is charged with having violated is created by the Constitution"). Section 1983 was enacted in 1871, at a time when most states did not allow recovery of emotional damages, if at all, without a showing of physical injury. See, e.g., *Cleveland, C., C. & St. L.R. Co. v. Stewart*, 24 Ind.App. 374, 56 N.E. 917, 922–23 (1900); *Spade v. Lynn & B.R. Co.*, 168 Mass. 285, 47 N.E. 88, 89 (1897); *Mitchell v. Rochester Ry. Co.*, 151 N.Y. 107, 45 N.E. 354, 354 (1896) ("plaintiff cannot recover for injuries occasioned by fright, as there was no immediate personal injury"). Cf. *Price*, 93 F.3d at 1250 ("Traditionally, common law courts have been reticent regarding compensatory damages for emotional distress in the absence of physical injury."). This common law rule has been substantially eroded in recent decades.[10] However, the very age of the rule provides strong support for defendants' argument that the Eighth Amendment (as applied to the states through the Fourteenth Amendment) does not require a damages remedy for emotional or mental injury resulting from a violation of the amendment.

---

**10.** Until recently, Indiana law adhered to the general rule that, even where a plaintiff alleges intentional infliction of emotional distress, damages for emotional injuries are recoverable only when accompanied by and resulting from physical injury. See *Little v. Williamson*, 441 N.E.2d 974, 975 (Ind.App.1982). Although Indiana courts had long recognized exceptions to that general rule, it was not until 1991 when the Supreme Court of Indiana expressly determined that "where intentional torts are concerned, recovery for emotional distress is now permitted in the absence of any physical injury if the tort is

one which would foreseeably provoke an emotional disturbance of the kind normally to be aroused in the mind of a reasonable person." *Shuamber v. Henderson*, 579 N.E.2d 452, 455 (Ind.1991), explaining the holding of *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991). Illinois, which permitted the recovery of damages for emotional distress before Indiana, still remarked in 1961 that only "recently" had courts held defendants liable for intentionally causing harm "where the harm … was mental suffering." *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157, 162 (1961).

## B. Access to Courts.

■ Plaintiffs next contend that § 1997e(e) burdens the exercise of their constitutional right of access to the courts, thus subjecting the statute to strict scrutiny. In *Lewis v. Casey,* the Supreme Court described the right of access to the courts as "a right to bring to court a grievance that the inmate wished to present" and "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." —— U.S. ——, ——, 116 S.Ct. 2174, 2180–81, 135 L.Ed.2d 606 (citations omitted). See *id.* at ——, 116 S.Ct. at 2180 (violations of that right occur where a person is "hindered [in] his efforts to pursue a legal claim"). In protecting this right, the Court has prohibited "State prison officials from actively interfering with inmates' attempts to prepare legal documents, or file them, and by requiring state courts to waive filing fees, or transcript fees, for indigent inmates." *Id.* at ——, 116 S.Ct. at 2179 (citations omitted). See also *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (right of access to the courts requires prison authorities to assist inmates in the preparation and filing of legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law).[11]

Here, § 1997e(e) does not burden plaintiffs' ability to bring a new civil action and does not burden their right of access to the courts. In *Plyler v. Moore,* 100 F.3d 365 (4th Cir.1996), the Fourth Circuit upheld a PLRA provision allowing for the immediate termination of any prospective relief granted in the absence of a finding by the court that the relief extends no further than necessary to correct the violation of a federal right.

See 18 U.S.C. § 3626(b)(2). The plaintiffs, representing a class of prison inmates whose consent decree was dissolved pursuant to § 3626(b)(2), argued that § 3626(b)(2) violated their right of access to the courts by depriving them of the right to enforce a judgment once it was obtained. The Fourth Circuit explained: "§ 3626(b)(2) does not burden this right, it merely limits the substantive relief to which the Inmates are entitled. Simply put, the Inmates have confused the right of access to the courts with the scope of the available substantive relief." 100 F.3d at 373.

Similarly, § 1997e(e) does not completely prevent plaintiffs from vindicating their Eighth Amendment rights. Rather, it is what its title indicates—a "Limitation on Recovery." Specifically, § 1997e(e) prohibits actions seeking recovery of damages for emotional and mental injury unless plaintiffs can show a physical injury. The Constitution does not create a fundamental right to pursue specific tort actions. *Miller v. United States,* 73 F.3d 878, 880 (9th Cir.1995); *Edelstein v. Wilentz,* 812 F.2d 128, 131 (3d Cir. 1987); cf. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432–33, 102 S.Ct. 1148, 1155–56, 71 L.Ed.2d 265 (1982) (state may create substantive defenses or immunities for use in adjudication, or may eliminate statutorily created cause of action altogether). The First Amendment right to petition the government for redress of grievances focuses on procedural impediments to the exercise of existing rights. It does not prevent a court from holding that a plaintiff has no remedy at law for the injuries he may allege. See *Bowman v. Niagara Mach. & Tool Works, Inc.,* 832 F.2d 1052, 1054 (7th Cir.1987) (Con-

11. One district court has struck down a different portion of the PLRA for violating the right of access to the courts. In *Lyon v. Vande Krol,* 940 F.Supp. 1433 (S.D.Iowa 1996), the court analyzed § 804(d) of the PLRA, which prohibits a prisoner from bringing a civil action or appealing a judgment in a civil action if the prisoner has on three or more occasions while incarcerated had a claim or appeal in federal court dismissed on grounds that it failed to state a claim or was frivolous or malicious, unless the prisoner is under imminent danger of serious physical injury or unless the prisoner pays the filing fee up front. See § 804(d), codified as 28 U.S.C.

§ 1915(g). The court determined that this provision "places a substantial burden on [the affected] inmates' ability to bring a new civil action and constitutes a substantial burden on their fundamental right of access to the courts." 940 F.Supp. at 1438. The court further determined that § 1915(g) was not narrowly tailored to achieve a compelling government interest and, accordingly, concluded that it was unconstitutional. *Id.* at 1438–39. The Seventh Circuit has, by contrast, enforced the limits of § 1915(g). See *Abdul–Wadood v. Nathan,* 91 F.3d 1023, 1025 (7th Cir.1996).

stitution guarantees access rather than success). By the same token, the constitutional right of access to the courts does not prevent Congress from enacting legislation that changes the substantive rules of law that apply in the courts. In short, § 1997e(e) does not substantially burden plaintiffs' right of access to the courts.

## C. Equal Protection.

■ Finally, plaintiffs argue that even if Congress could permissibly restrict the scope of recovery under § 1983, it has done so on an arbitrary basis by enacting § 1997e(e). Specifically, plaintiffs contend that the classification made between (1) prisoners and non-prisoners, and (2) suits against federal officers (under *Bivens*) and suits against state officers (under §§ 1983 & 1997e(e)) are not rationally related to a legitimate government interest. The court disagrees.

Congress did not unconstitutionally distinguish between suits arising in prison and other suits. Since prisoners are not a suspect class, and since, as discussed above, § 1997e(e) does not burden a fundamental right, the statute is valid under the Equal Protection Clause if it is rationally related to a legitimate government interest.[12] The government has several legitimate interests supporting the passage of § 1997e(e). Senator Kyl, co-sponsor of the PLRA, stated that the legislation was "needed because of the large and growing number of prisoner civil rights complaints, the burden that disposing of meritless complaints imposes on efficient judicial administration, and the need to discourage prisoners from filing frivolous complaints...." 141 Cong.Rec. S7498–01, *S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl). See *Wilson v. Giesen,* 956 F.2d 738, 744 (7th Cir.1992) (legitimate interest in

promoting the efficient dispensation of justice); *Holman v. Hilton,* 712 F.2d 854, 860 (3d Cir.1983) (legitimate interest in discouraging frivolous suits). Based on the statistics discussed in the Senate debates, a restriction on claims for damages arising while prisoners are in custody, consistent with common law principles, is rationally related to those interests. See, *e.g.,* S14611–01, *S14626 (daily ed. Sept. 29, 1995) (statement of Sen. Hatch) ("In 1994, over 39,000 lawsuits were filed by inmates in Federal courts, a staggering 15 percent over the number filed the previous year. The vast majority of these suits are completely without merit. Indeed, roughly 94.7 percent are dismissed before the pretrial phase, and only a scant 3.1 percent have enough validity to even reach a trial.").

Plaintiffs also contend that the statute is flawed for failing to distinguish between *pro se* litigants and those represented by counsel, between pre-trial detainees and convicted felons, and between suits asserting the violation of fundamental rights and other suits. There arguments, however, merely show that the statute might have been more narrowly tailored. The failure to distinguish among types of prisoners does not render § 1997e(e) unconstitutional under a rational basis standard of review. Plaintiffs also cite *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), where, plaintiffs argue, the Court struck down legislation that "treated prisoners more harshly than other persons." Pl. Br. at 11. While the Court did strike down such a statute, it did so because whether the person was a prisoner was irrelevant to the purposes of the statute, which dealt with procedures for evaluating a person's mental status. 383 U.S. at 114, 86 S.Ct. at 764. Here, by contrast, Congress drew a connection between a person's status as a

---

12. Although some portions of plaintiffs' brief appear to concede that the court should not apply heightened scrutiny in reviewing § 1997e(e) for purposes of plaintiffs' equal protection claims, other portions of plaintiffs' brief argue otherwise. For example, plaintiffs assert that "[r]estrictions on prisoner rights that do not implicate prison safety or security at all should be subject to strict scrutiny *particularly where suspect classes are involved.*" Pl. Br. at 8 (emphasis added). Later, plaintiffs repeat that "the PLRA should be subject to strict scrutiny...." *Id.* at 18. Defen-

dants responded that prisoners are not entitled to "heightened equal protection review that is reserved for classifications based on race, alienage, national origin, and gender. The Plaintiffs may be a class of suspects, but they are not a suspect class." Def.Br. at 18–19 (citation omitted). The law is clear that "prisoners are not a suspect class" and, therefore, that a statutory classification "need only be rationally related to a legitimate governmental interest." *Wilson v. Giesen,* 956 F.2d 738, 744 (7th Cir.1992); accord, *United States v. King,* 62 F.3d 891, 895 (7th Cir.1995).

prisoner and a higher propensity to assert frivolous federal claims. That connection is not at all irrational for purposes of the Equal Protection Clause.

The failure to distinguish between *pro se* litigants and prisoners who can persuade an attorney to represent them also does not violate the Equal Protection Clause. The availability of damages and attorneys' fees under 42 U.S.C. § 1988 can provide sufficient economic incentive for lawyers to handle some prisoners' civil cases, as plaintiffs' counsel has in this case. The discipline of the imperfect marketplace creates an important practical difference between the claims of a prisoner who has persuaded a private attorney to take on a case and the claims of prisoners who have not been able to attract private representation. See generally *Merritt v. Faulkner*, 697 F.2d 761, 768–71 (7th Cir.1983) (concurring and dissenting opinions). However, the Equal Protection Clause does not require Congress to delegate to the private bar (or to district judges' discretion in requesting counsel to assist a prisoner) the choice between two sets of rules for deciding the relief available to the plaintiff.[13]

Plaintiffs also contend that Congress violated their rights under the Equal Protection Clause by failing to apply § 1997e(e) to *Bivens* claims against federal officers and employees. As a matter of statutory interpretation, it is not clear that § 1997e(e) does *not* reach *Bivens* claims. The Supreme Court has held that the provisions in § 1997e in general do not apply to *Bivens* claims. *McCarthy v. Madigan*, 503 U.S. 140, 149–50, 112 S.Ct. 1081, 1088–89, 117 L.Ed.2d 291 (1992) ("Congress, in enacting § 1997e, stopped short of imposing a parallel [exhaustion] requirement in the federal prison context."). Since *McCarthy*, however, § 1997e has been substantially altered. The definition of "prisoner," added to § 1997e as part of the PLRA, appears to be broad enough to reach prisoners in federal custody. See 42 U.S.C. § 1997e(h). In addition, the language

in § 1997e(a) is broader now than the language that helped persuade the Court in *McCarthy* that § 1997e did not apply to *Bivens* claims. While § 1997e(a) formerly referred to actions brought pursuant to 42 U.S.C. § 1983, it now refers to actions brought under § 1983 "or any other Federal law." This reference to suits under "any other Federal law" could be interpreted to include the judicial interpretation of the Constitution that supports *Bivens* claims. On the other hand, some statements in the debates over the PLRA indicate that § 1997e applies only to claims brought pursuant to § 1983. See 141 Cong. Rec. S7498–01, *27526 (daily ed. May 25, 1995) (statement of Sen. Kyl) (stating that provisions regarding mental and emotional injury apply to suits brought under § 1983).

▪ The court need not decide this question of statutory interpretation in this case. Assuming for purposes of argument that § 1997e(e) does not apply to *Bivens* actions, that would not render the statute unconstitutional. The Constitution does not require that claims asserted under *Bivens* and those asserted under § 1983 be treated identically. See, *e.g., McCarthy*, 503 U.S. at 149–50, 112 S.Ct. at 1088–89 (determining that the exhaustion of remedies provisions in 42 U.S.C. § 1997e(a) before enactment of the PLRA apply to § 1983 actions but not *Bivens* actions); *Kreines v. United States*, 33 F.3d 1105, 1109 (9th Cir.1994) (rejecting argument that failing to award attorney fees in *Bivens* actions, while awarding such fees in parallel actions under § 1983, "inequitably favors federal officers over state officers"); see also *Hall v. United States*, 773 F.2d 703, 707 (6th Cir.1985) (joining the "clear majority of courts" rejecting the proposition that the federal government must be liable for attorney fees in *Bivens* actions "to the same extent" that a state or local government would be liable for attorney fees under 42 U.S.C. § 1988 in § 1983 actions); accord, *Saxner v. Benson*, 727 F.2d 669, 673 (7th Cir.1984),

---

**13.** The court by no means intends to imply that representation of prisoners is purely a matter of economics. Many members of the bar who represent prisoners act in accord with the noblest ideals of the legal profession. In addition, no court can or should ignore the fact that, while

many civil actions filed by prisoners are legally frivolous, some of these actions have merit. Distinguishing between the frivolous, the merely weak, and the meritorious claims is vital to effective protection of prisoners' constitutional rights.

*aff'd,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).

Federalism concerns show that Congress could rationally choose to impose more restrictions on relief in § 1983 actions than in *Bivens* actions. Section 1983 applies to defendants who act under color of state law. The vast majority of defendants in § 1983 cases seeking damages are local governments and state and local government officials sued in their individual capacities. Defendants in *Bivens* actions are usually federal employees who are paid, supervised, and sometimes indemnified under the ultimate authority of Congress. In light of the allocation of powers and responsibilities between the federal and state governments, it would not be irrational for Congress to be more generous with *Bivens* plaintiffs who sue federal actors than with § 1983 plaintiffs who sue state actors.

By enacting § 1997e(e), Congress elected to modify a statute of its own creation. If it chose, at the same time, not to modify in similar ways a cause of action that the Supreme Court has found implicit in the Constitution, the decision to enact legislation that would be, in plaintiffs' view, underinclusive, would not invalidate the statute. Congress could choose to address the area it feels is in most pressing need of reform without pressing the logic of the policy to all comparable areas of concern. See 141 Cong.Rec. S7498–01, *S7527 (daily ed. May 25, 1995) (statement of Sen. Kyl) (noting the climbing number of § 1983 suits, and stating that "of all civil cases filed in the Nation's U.S. district courts, more than 1 in every 10 civil filings is now a section 1983 lawsuit"). Cf. *Williamson v. Lee Optical of Okla.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (statutory "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind").

### IV. *Plaintiffs' Tort Claims Under Indiana Law.*

The court is ordering dismissal of the only claims over which the court has original jurisdiction. That leaves only plaintiffs' state law negligence claims. The supplemental jurisdiction statute provides that district courts may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The rebuttable presumption is that district courts should decline to exercise jurisdiction over supplemental claims where the federal claims are dismissed before trial. *E.g., Khan v. State Oil Co.,* 93 F.3d 1358, 1366 (7th Cir. 1996). Nothing rebuts that presumption here.

### *Conclusion*

Plaintiffs' § 1983 claims seek damages for alleged emotional and mental injuries. Under the new § 1997e(e), prisoners (or former prisoners) may not obtain such damages for injuries occurring while in custody without showing a physical injury. Because plaintiffs cannot show at this time such a physical injury within the meaning of § 1997e(e), their claims are not viable under § 1983. Plaintiffs' arguments that § 1997e(e) violates plaintiffs' constitutional rights are not persuasive. Accordingly, plaintiffs' Eighth Amendment claims are dismissed without prejudice. This court will also dismiss plaintiffs' state tort claims without prejudice. Defendant's motion for judgment on the pleadings is GRANTED. Judgment will be entered accordingly.