Sally Jo MILLER, individually and as personal representative of the estate of Lawrence Miller; Thomas Miller; Michelle Miller; John Miller; Kenneth Miller, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–35629.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 1995.

Decided Dec. 11, 1995.

Dennis McCafferty, James, Gray & McCafferty, Great Falls, Montana, for plaintiffs-appellants.

George F. Darragh, Assistant United States Attorney, Great Falls, Montana, for defendant-appellee.

Before: REINHARDT and TROTT, Circuit Judges, and SCHWARZER, Senior District Judge.*

SCHWARZER, Senior District Judge:

Plaintiff, the widow of an Army sergeant who died in a military hospital in Japan, appeals the dismissal of her action against the government for negligent infliction of emotional distress. The issues on appeal are: (1) whether the foreign country exception of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(k), in conjunction with the exclusive remedy provision of the Federal Employees Liability Reform and

Tort Compensation Act of 1988 ("Liability Reform Act"), 28 U.S.C. § 2679(d)(1), denies plaintiff equal protection of the laws under the Fifth Amendment Due Process Clause; and (2) whether the statutory scheme operates as an unconstitutional taking of a valuable property right in violation of the Fifth Amendment.

## FACTS

Plaintiff Sally Miller is the widow of Master Sergeant Lawrence Miller who died in a military hospital in Japan, allegedly as a result of malpractice by the military physicians who attended him. Plaintiff was present during the physicians' course of diagnosis and treatment and here seeks damages for emotional distress she claims that she suffered as a result. In her amended complaint, brought under diversity jurisdiction, plaintiff named these physicians as individual defendants. The government moved to be substituted for the individual defendants pursuant to the Liability Reform Act. 28 U.S.C. § 2679(d)(1). Having been substituted in the action as the sole defendant, the government then moved to dismiss under the provision of the FTCA which bars its application to "any claims arising in a foreign country". 28 U.S.C. § 2680(k). The district court granted the motion and plaintiff appealed. We have jurisdiction of the appeal under 28 U.S.C. § 1291 and affirm.

## DISCUSSION

■ A district court's dismissal for lack of subject matter jurisdiction is reviewed *de novo. Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 772 (9th Cir.1995). We must determine whether the Liability Reform Act's exclusive remedy provision and the FTCA's foreign country exception together deny plaintiff equal protection of the law or violate the Fifth Amendment Takings Clause.

In *United States v. Smith,* 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991), the Supreme Court applied the statutory scheme to facts similar to those in the present case.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

In *Smith*, an Army sergeant and his wife sued a military physician for malpractice in the course of delivering their baby at an Army hospital in Italy. The district court had diversity jurisdiction, and the government moved to be substituted as the defendant pursuant to the Gonzalez Act, which provides that an action against military medical personnel for torts committed within the scope of their employment must be maintained as an action against the government under the FTCA. *See* 10 U.S.C. §§ 1089(a), (b). The government then moved to dismiss on the basis of the FTCA's foreign country exception and the district court granted the motion. While the action was pending, Congress enacted the Liability Reform Act which precludes all non-FTCA actions for torts committed by government employees generally, in the scope of their employment. 28 U.S.C. § 2679(b)(1).

This court reversed, holding that neither the Gonzalez Act nor the Liability Reform Act required substitution of the government as the defendant or otherwise immunized the individual defendant from liability. We reasoned that the Liability Reform Act applied only when the FTCA in fact provided a remedy. *Smith v. Marshall*, 885 F.2d 650, 655 (9th Cir.1989). Because the FTCA precluded a remedy against the government, the tort claim against the physician was not barred. Our reasoning was the same as that of the Eleventh Circuit in *Newman v. Soballe*, 871 F.2d 969 (11th Cir.1989), on which plaintiff in the present case relies.

The Supreme Court reversed this court's decision, necessarily rejecting also the view adopted by the Eleventh Circuit. *See United States v. Smith*, 499 U.S. at 165, n. 7, 171, 111 S.Ct. at 1185, n. 7, 1187 (noting the consistent holdings in the Ninth Circuit below and the Eleventh Circuit in *Newman v. Soballe* ). It held that, other than in cases falling within the specific statutory exceptions, none of which were applicable, the FTCA provides the exclusive remedy for torts committed by government employees in the course of their employment. The Court reasoned that the language of the Liability Reform Act, and its two specific exceptions inapplicable here, "persuades us that Con-

gress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether." *Id.* at 166, 111 S.Ct. at 1185.

*Smith*, however, did not address the constitutional arguments advanced by plaintiff here. Plaintiff contends that the statutory scheme denies her: (1) equal protection of the laws; and (2) the right against unconstitutional taking of property under the Fifth Amendment. We address the second claim first.

Despite plaintiff's contention that the statutory scheme operates as "an unconstitutional taking of a valuable property right: Sally Miller's tort claim for negligent infliction of emotional distress", this court has rejected the notion that the FTCA violates the Fifth Amendment Takings Clause by substituting the government as defendant even when this results in denial of the claimant's cause of action. *In re Consolidated United States Atmospheric Testing Litig.*, 820 F.2d 982, 988–92 (9th Cir.1987) (holding that substitution of remedy under the FTCA for state law claims against private contractors does not violate Fifth Amendment Due Process or Takings Clauses even when FTCA's discretionary function exception leaves plaintiff without a cause of action), *cert. denied, Konizeski v. Livermore Labs.*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988). *See also Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (holding that congressional bar on claims for servicemen's injuries arising out of or incident to military service not an unconstitutional taking); *Hammond v. United States*, 786 F.2d 8 (1st Cir.1986) (holding that 42 U.S.C. § 2212, which requires substitution of United States as defendant in suits against private contractors for radiation injuries from atomic testing and makes FTCA the sole remedy, does not violate the Fifth Amendment Due Process or Takings Clauses). We therefore decline to find that the application of the statutory scheme resulted in an unlawful taking of plaintiff's tort claim within the meaning of the Fifth Amendment.

With respect to plaintiff's equal protection claim, we note first that "an act of Congress comes to us clothed with a presumption of constitutionality, and the burden is on the plaintiff to show that it violates due process." *In re Consolidated United States Atmospheric Testing Litig.*, 820 F.2d at 990. In the present case, plaintiff, without further explanation, states:

[C]ivilian military dependents residing in a foreign country are a suspect class for purposes of deciding who will have and who will not have tort remedies. Further, the right of a civilian—particularly civilians who are military dependents living out of the country—to redress when injured by a Government employee would surely seem to be a fundamental right. For these reasons, the compelling state interest test should be applied.

We find this reading of the equal protection component of the Due Process clause unpersuasive.

First, the Constitution does not create a fundamental right to bring suit for injuries caused by government employees. *See Edelstein v. Wilentz*, 812 F.2d 128, 131 (3rd Cir. 1987) ("The Constitution does not create a fundamental right to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational."); *see also Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.") (citing U.S. Const., art. VI, cl. 2); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–33, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) ("Of course, the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether—just as it can amend or terminate its welfare programs.").

As the Third Circuit recognized in *Thomason v. Sanchez*, 539 F.2d 955 (3rd Cir.1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977), Congress may enact laws which meet its legislative purposes for a broad category of cases and, as long as the law is not irrational or arbitrary, Congress is not required to ensure coverage for every possible class of individuals to which the law might be applied. In *Thomason*, plaintiff, a serviceman named Sanchez, had sued another serviceman and his wife in state court for injuries sustained as a result of the latter's negligence. The action was removed by the government and consolidated with federal complaints filed by plaintiff, his wife, his insurer and the United States. In that case, the Federal Drivers Act, 28 U.S.C. § 2679(b), provided that an action against the government under the FTCA was the exclusive remedy for injuries caused by a government employee operating a motor vehicle while acting in the scope of his employment. The action against the government, however, was barred by the *Feres* doctrine. The Third Circuit specifically rejected plaintiff's argument that "the Federal Drivers Act, as applied to him to deprive him of all lawsuit remedies, constitutes a denial of due process,":

"[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none. * * * It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs."

539 F.2d at 960 (quoting *Silver v. Silver*, 280 U.S. 117, 123–24, 50 S.Ct. 57, 59, 74 L.Ed. 221 (1929) and citing *Carr v. United States*, 422 F.2d 1007, 1011–12 (4th Cir.1970)).

Moreover, we do not find plaintiff as a military dependent injured on foreign soil to belong to a suspect class requiring heightened scrutiny of the legislative scheme. Protection of "suspect classes" is reserved for groups "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). *Com-*

pare *Brown v. Board of Educ. of Topeka, Shawnee County, Kan.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (holding race-based laws as suspect under equal protection clause) *and Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (applying suspect status to ancestry-based classification) *with Harris v. Forklift Systems,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring) ("Indeed, even under the Court's equal protection jurisprudence, which requires 'an exceedingly persuasive justification' for a gender-based classification, ... it remains an open question whether 'classifications based on gender are inherently suspect'") (citations omitted) *and Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) ("Nor does the class of uniformed state police officers over 50 constitute a suspect class....").

Finding no fundamental right or suspect class at issue, we need only apply the rational basis test to the classification of military dependents resulting from the FTCA and Liability Reform Act. *See Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) (holding that in the absence of suspect classes or fundamental rights, "traditional equal protection principles" apply in which "distinctions need only be drawn in such a manner as to bear some rational relationship to a legitimate state end."). Plaintiff "submits that there can be no rational explanation to these people [i.e., civilian military dependents] as to why they would have redress for medical negligence if it happens in Kansas, but not if it happens in Okinawa." However, the legislative history behind the FTCA and the Liability Reform Act clearly contradict this statement and demonstrate a rational basis for the exclusion.

■ Turning first to the FTCA's foreign country exception, we find that Congress was well aware not only of the purpose behind the exception but also of its effect of depriving some injured claimants of a judicial remedy. In *United States v. Spelar,* 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 (1949), the Supreme Court discussed the history and rationale of the exception. It quoted congression-

al testimony by Assistant Attorney General Francis M. Shea, explaining why the foreign country exception should not be limited to all claims "arising in a foreign country in [sic, on] behalf of an alien," but should exclude the last five words of that phrase:

"Mr. SHEA. ... Claims arising in a foreign country have been exempted from this bill ... whether or not the claimant is an alien. Since liability is to be determined by the law of the situs of the wrongful act or omission it is wise to restrict the bill to claims arising in this country. This seems desirable because the law of the particular State is being applied. Otherwise it will lead I think to a good deal of difficulty.

"Mr. ROBSION [Congressman on House Committee on the Judiciary]. You mean by that any representative of the United States who committed a tort in England or some other country could not be reached under this?

"Mr. SHEA. That is right. That would have to come to the Committee on Claims in the Congress."

338 U.S. at 221, 70 S.Ct. at 12. Thus, Congress realized that not only aliens but also United States citizens would be precluded from bringing suit against the federal government for torts committed in a foreign country. As the Court in *Spelar* concluded:

In brief, though Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power. The legislative will must be respected.

*Id. See also Heller v. United States,* 776 F.2d 92, 98 (3rd Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986) ("government's desire to avoid application to it of the vagaries of foreign law is an important and rational consideration distinguishing such cases from its routine assumption of tort liability in federal courts"). We decline to find that this exception is irrational.

With respect to the Liability Reform Act's absolute immunity for government officials,

we note that absolute immunity for military medical personnel was first granted by the 1976 Gonzalez Act. 10 U.S.C. § 1089(a), (b). Adopted in response to judicial decisions which had denied military physicians absolute immunity, the Gonzales Act was one of a number of immunity statutes enacted by Congress to protect categories of government employees against individual liability for acts committed within the scope of their employment. *Smith,* 499 U.S. at 170, n. 11, 111 S.Ct. at 1187, n. 11. The act's legislative history states that "the bill meets the serious and urgent needs of defense medical personnel by protecting them fully from any personal liability arising out of the performance of their official medical duties." S.Rep. No. 1264, 94th Cong., 2d Sess. 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4444. The Report noted that "malpractice litigation against defense medical personnel has grown dramatically in recent years" and there "has been [a] steep rise in the number of suits against defense medical personnel in their individual capacities." S.Rep. No. 1264, 94th Cong., 2d Sess. 4–5, *reprinted in* 1976 U.S.C.C.A.N. 4446. "[N]ot only has it become extraordinarily expensive, but malpractice insurance is often unavailable at any price." S.Rep. No. 1264, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.C.C.A.N. 4447.

While absolute immunity afforded military medical personnel under the Gonzalez Act was arguably limited to claims arising within the United States, *see Smith,* 499 U.S. at 170, 111 S.Ct. at 1187, that immunity was made comprehensive by the 1988 Liability Reform Act which extends to claims arising on foreign soil. Adopted in response to the Supreme Court's decision in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) (holding that federal officials are not absolutely immune from state tort law liability when challenged conduct is not discretionary), the Liability Reform Act provides absolute immunity for all government employees for torts committed in the scope of their employment. In *Westfall,* the Court limited such immunity under common law principles to discretionary acts but urged Congress to provide standards governing immunity of federal employees involved in state-law tort actions. *Id.* at 300, 108 S.Ct. at 585. The

act's legislative history discussed the need for the legislation, noting that "[t]he potential increase in liability that results from the *Westfall* decision affects officers and employees of all three branches of government." H.R.Rep. No. 700, 100th Cong., 2d Sess. 3 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5947. The Report stated:

> The "exclusive remedy" provision . . . [would preclude] suits against Federal employees . . . even where the United States has a defense which prevents an actual recovery. Thus, any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28, U.S.C. also precluded against an employee in his or her estate.

H.R.Rep. No. 700, 100th Cong., 2d Sess. 7 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5950.

While depriving persons injured outside the United States of a tort remedy may be harsh, we cannot conclude that the statutory scheme fails the rational basis test. The conditions overseas may well be sufficiently different that Congress did not wish to assume liability regardless of the possible negligence of government personnel. So, too, it may not have wished to subject itself to the vagaries of foreign law or to create special rule applying non-forum law. All in all, we cannot say that the decision not to provide a remedy for overseas torts was arbitrary or irrational.

We therefore conclude that the application of the FTCA's foreign country exception in conjunction with the Liability Reform Act is supported by a rational basis and does not deny plaintiff equal protection of the laws.

The judgment is affirmed. Costs to appellee.