Amby Gary OWENS, Petitioner,

v.

**VENTURA COUNTY SUPERIOR COURT, et al., Respondents.**

**No. CV 98–3964 AHM(RC).**

United States District Court,
C.D. California.

March 9, 1999.

---

Darryl E. Mounger, Sherman Oaks, CA, Diane E. Berley, Woodland Hills, CA, for petitioner.

Kevin B. Drescher, Ventura County District Attorney, Ventura, CA, for respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MATZ, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a de novo determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable A. Howard Matz, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

On February 14, 1997, in the Ventura County Superior Court, petitioner Amby Gary Owens pleaded nolo contendere to, and was convicted of, operating an endless chain scheme in violation of California Penal Code ("P.C.") § 327, a felony. Clerk's Transcript ("CT") 42. The trial court reduced the conviction to a misdemeanor, pursuant to P.C. § 17(b). CT 42–43. The petitioner was sentenced to three years informal probation, which was stayed on certain conditions, including that he perform 80 hours of community service. *Id.*

The petitioner appealed his conviction to the California Court of Appeal, which affirmed the judgment on November 26, 1997, in a published opinion, *People v. Owens,* 59 Cal.App.4th 798, 69 Cal.Rptr.2d 428 (1997). Return to Writ of Habeas Corpus ("Return"), Exhibit ("Exh.") A. The petitioner then filed a petition for review in the California Supreme Court, which was denied on February 25, 1998. Return, Exh. B.

**II**

The California Court of Appeal found the following facts and circumstances underlying the petitioner's conviction: On July 13, 1995, petitioner and approximately 70 other people attended a recruiting meeting for a pyramid scheme to which petitioner already belonged. After the meeting, petitioner accepted two envelopes, each containing $2,000.00, from a new member. He was the only person present at the July 13, 1995 meeting who was prosecuted. Another meeting held for the same pyramid scheme resulted in the prosecution of two Simi Valley police officers and five civilians. Although the civilians were offered misdemeanor dispositions by the district attorney, the prosecutor would accept only felony pleas from the police officers.

The petitioner moved to dismiss the indictment as a discriminatory prosecution,

arguing that he was prosecuted and required to plead to a felony only because he is a police officer. Although the trial court agreed that petitioner's status as a police officer motivated both his prosecution and the felony charge, it denied the motion after concluding that it was "perfectly permissible" for the district attorney to distinguish between police officers and civilians in charging decisions.[1]

## III

On May 21, 1998, petitioner, through his counsel, filed the instant petition for writ of habeas corpus. On October 5, 1998, respondent District Attorney of Ventura County filed his return with supporting memorandum of points and authorities. On January 5, 1999, respondent California Attorney General filed his return. The petitioner filed his supplemental traverse to respondent District Attorney's return on November 20, 1998, and his traverse to respondent California Attorney General's return on January 25, 1999.

In his application for writ of habeas corpus, petitioner challenges his conviction and sentence on the following grounds:

Ground One: "The California courts violated the rights of all California peace officers to equal protection under the Fourteenth Amendment, [sic] when they approved of and expanded the discriminatory enforcement of the criminal laws against petitioner Amby Gary Owens, an off-duty peace officer at the time of the offense." Petition at 6–A.

Ground Two: "The California courts violated the rights of all California peace officers to due process under the Fifth and Fourteenth Amendments, [sic] when they concluded that peace officers who commit crimes are 'morally culpable to a greater extent than the civilian[s]' who commit crimes and suggested they be held to a higher standard and charged more harshly." Petition at 6–B.

Ground Three: "The California courts violated the separation of powers when they concluded that peace officers who commit crimes are 'morally culpable to a greater extent than the civilian[s]' who commit crimes and suggested that prosecutors hold officers to a higher standard and charge them more harshly." *Id.*

## DISCUSSION

## IV

The petitioner's claims must be considered in light of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),[2] which "worked substantial changes to the law of habeas corpus." *Moore v. Calderon,* 108 F.3d 261, 263 (9th Cir.), *cert. denied,* 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance to the petitioner's claims are the revisions made to 28 U.S.C. § 2254(d), which now provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Further, under the AEDPA, a federal court shall presume that the determination of factual issues made by a state court is correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

 Here, the petitioner raised his claim before the California Supreme Court

---

1. *Owens,* 59 Cal.App.4th at 800–01, 69 Cal. Rptr.2d at 429.

2. Pub.L. No. 104–132, 110 Stat. 1214.

in his petition for review, which was denied without a written opinion. The California Supreme Court's decision, however, is presumed to be on the merits even though it is not accompanied by an explanation. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "[W]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). Thus, to determine the reasonableness of the California Supreme Court's decision, which was without a written explanation, this Court must consider the opinion of the California Court of Appeal, which did fully explain its reasoning.

## V

■ "Whether to prosecute and what charge to file or bring before a grand jury generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). This discretion, however, is "subject to constitutional constraints." *Id.* at 125, 99 S.Ct. at 2204–05. One of these constraints is imposed by the equal protection clause of the Fourteenth Amendment and the equal protection component of the Fifth Amendment. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996); *Wayte v. United States*, 470 U.S. 598, 608 & n. 9, 105 S.Ct. 1524, 1531 & n. 9, 84 L.Ed.2d 547 (1985). Under the equal protection provisions, the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 U.S. at 464, 116 S.Ct. at 1486

(quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)); *See also Wayte*, 470 U.S. at 608, 105 S.Ct. at 1531 (holding decision to prosecute also may not be based upon exercise of protected statutory and constitutional rights); *United States v. Taylor*, 693 F.2d 919, 923 (9th Cir.1982) (requiring defendant show Government selected him from larger group of non-prosecuted alleged violators because of his exercise of constitutional right).

■ Discriminatory or selective prosecution claims are analyzed according to ordinary equal protection standards. *Armstrong*, 517 U.S. at 465, 116 S.Ct. at 1487; *Wayte*, 470 U.S. at 608, 105 S.Ct. at 1531. Therefore, to demonstrate impermissible discriminatory or selective prosecution, a criminal defendant must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive. *Wayte*, 470 at 608, 105 S.Ct. at 1531; *United States v. Lee*, 786 F.2d 951, 957 (9th Cir.1986); *see also United States v. Davis*, 36 F.3d 1424, 1432 (9th Cir.1994), *cert. denied*, 513 U.S. 1171, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995) ("To establish a prima facie case of selective prosecution, a defendant must show both (1) that others similarly situated have not been prosecuted, and (2) that the prosecution is based on an impermissible motive, i.e. discriminatory purpose or intent.").

■ The petitioner contends that he was discriminatorily prosecuted on a felony charge solely because he is a police officer, in violation of the equal protection clause and the due process provisions of the Fourteenth Amendment, as well as the "separation of powers." In his supporting memorandum, however, the petitioner relies solely on equal protection cases and fails to cogently explain, or cite supporting authority for, his due process [3] and separa-

---

3. The United States Supreme Court has long held that vindictive prosecution, as well as vindictive sentencing, violate due process. *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 724–25, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969). *See also United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir.1996) (holding prosecutor violates due process when bringing additional charges solely to punish defendant for exercising constitutional or statutory right).

tion of powers claims.[4] Therefore, all of petitioner's claims will be analyzed together under the equal protection rubric.

 To trigger strict judicial scrutiny in the discriminatory enforcement context, a defendant must show that the decision to prosecute him was based on his membership in a suspect class or infringed on a fundamental right he was exercising. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). Here, there is no dispute that petitioner "was singled out for felony prosecution because he is a police officer." Return, Exh. A at 27. Attacking such "singl[ing] out," the petitioner claims that strict scrutiny should be utilized to analyze the prosecutor's decision because, as a police officer, he is, first, a member of a suspect class and, second, the decision to prosecute him adversely affected his fundamental rights of liberty, employment, and freedom of association. Petition at 6–A, 6–B.

Over the years, the federal courts have determined that suspect classes for equal protection purposes include classifications based on race, religion, alienage, national origin and ancestry. *See Burlington Northern Railroad Co. v. Ford*, 504 U.S. 648, 651, 112 S.Ct. 2184, 2186, 119 L.Ed.2d 432 (1992) (holding classification based on religion is suspect classification); *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971) (holding classification based on alienage is suspect classification); *Loving v. Virginia*, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (holding classification based on race is suspect classification); *Oyama v.*

*California*, 332 U.S. 633, 644–646, 68 S.Ct. 269, 274–275, 92 L.Ed. 249 (1948) (holding classification based on national origin is suspect classification); *Hirabayashi v. United States*, 320 U.S. 81, 100, 63 S.Ct. 1375, 1385, 87 L.Ed. 1774 (1943) (holding classification based on ancestry is suspect classification). Quasi-suspect classes, or those subject to heightened review, include, for example, classifications based on gender and illegitimacy. *See Mississippi University for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982) (holding classifications based on gender calls for heightened standard of review); *Trimble v. Gordon*, 430 U.S. 762, 767, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31 (1977) (holding illegitimacy is quasi-suspect classification).

The petitioner has not cited any cases holding police officers to be members of a suspect class, or even a quasi-suspect class. Moreover, the Supreme Court has determined that a "class of uninformed state police officers over 50" does not constitute a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). Furthermore, a class of police officers would not possess any of the characteristics which have traditionally been considered by courts in defining a suspect class, such as being "saddled with such disabilities, or subjected to such history of purposeful unequal treatment, or relegated to such a position of powerlessness as to command extraordinary protection from the majoritarian political process." *Rodriguez*, 411 U.S. at 28, 93 S.Ct. at 1294; *Miller v. United States*, 73 F.3d 878, 881

4. Regarding petitioner's "separation of powers" claim, petitioner's argument that the California Court of Appeal, in stating that police officers are "morally culpable to a greater extent than the civilian participants in the endless chain scheme," somehow usurped the power of the legislative branch of government turns the discriminatory prosecution defense on its head. As the Supreme Court has explained, a defendant making a discriminatory prosecution claim is **asking** the court to exercise power over the executive branch. *Armstrong*, 517 U.S. at 464, 116 S.Ct. at 1486; *see*

*also Davis v. Municipal Court for the San Francisco Judicial Dist.*, 46 Cal.3d 64, 76, 249 Cal.Rptr. 300, 305, 757 P.2d 11 (1988) (holding district attorney's decision to charge defendant is within traditional executive authority). Further, the California Court of Appeal, in making the statement it did, was merely explaining the rationale of its decision, which is precisely what any court is supposed to do when determining the merit of an equal protection claim. *Plyler v. Doe*, 457 U.S. 202, 217, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

(9th Cir.1995); *see also Velasquez v. Frapwell*, 160 F.3d 389, 391 (7th Cir.1998) ("Military personnel are no more a discrete and insular minority than police or firemen."). Therefore, petitioner's argument that he is a member of a suspect class has no merit.

■ There is also no merit to petitioner's claim that the prosecutorial decision impacted petitioner's fundamental rights of liberty, public employment and freedom of association as protected by the First Amendment. Once again, the petitioner does not cite any cases standing for the proposition that the right to liberty is a fundamental right for equal protection purposes. *Cf. Oyler*, 368 U.S. at 456, 82 S.Ct. at 506 ("[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation."). As the District of Columbia Circuit Court of Appeals has noted:

> In the vast majority of equal protection cases, the focus, for purposes of determining whether a "fundamental interest" is involved, is not upon the punishment or other imposition to which the complaining party has been subjected, but rather upon the activity of the complaining party which has been made the reason for the punishment or imposition. Thus, the rational basis justification normally required to sustain commercial regulation against equal protection attack is not replaced by a "strict scrutiny" test when the consequence of violating the regulation is a deprivation of physical freedom through a jail term....

*United States v. Cohen*, 733 F.2d 128, 133 (D.C.Cir.1984) (en banc) (citations omitted); *see also Wottlin v. Fleming*, 136 F.3d 1032, 1036–37 (5th Cir.1998) (per curiam) (holding no fundamental right to early release from prison; thus, rational basis test applies to review of inmate's classification). Furthermore, if petitioner's contention were correct, in every criminal case where discriminatory prosecution was raised as a defense, the court would be required to review the prosecutorial decision under the strict scrutiny standard and the prosecutor would be required to demonstrate that the prosecution of the defendant served a compelling state interest; however, this would be absurd.

■ Similarly, "[t]here is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purpose of invoking strict scrutiny under the Equal Protection Clause." *Lupert v. California State Bar*, 761 F.2d 1325, 1327 n. 2 (9th Cir.1985); *see also Murgia*, 427 U.S. at 313, 96 S.Ct. at 2566 (holding that there exists no fundamental right to continued public employment).

■ Finally, petitioner cannot show that his First Amendment right to freedom of association is affected by the felony prosecution. "While the First Amendment does not in terms protect a 'right of association,'" Supreme Court cases "have recognized that it embraces such a right in certain circumstances." *City of Dallas v. Stanglin*, 490 U.S. 19, 23–24, 109 S.Ct. 1591, 1594, 104 L.Ed.2d 18 (1989); *see also National Association for the Advancement of Colored People v. Alabama*, 357 U.S. 449, 460–462, 78 S.Ct. 1163, 1170–1172, 2 L.Ed.2d 1488 (1958) (holding freedom of association is a "fundamental right"). The petitioner's desire to associate with other persons, however, is not protected by the fundamental right of freedom of association. It does not involve either the "freedom of intimate association" affecting choices to enter into and maintain certain intimate relationships or the freedom of association "for those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–618, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984) (O'Connor, J., concurring in part). Instead, the right petitioner expounds is primarily the right to a commercial association, rather than an activity of the type protected by the First Amendment. *Stanglin*, 490 U.S. at 24, 109 S.Ct. at 1595;

*Freeman v. City of Santa Ana,* 68 F.3d 1180, 1188 (9th Cir.1995); *IDK, Inc. v. County of Clark,* 836 F.2d 1185, 1194 (9th Cir.1988).

██ Since petitioner is not a member of a suspect class, and no fundamental right of his has been affected, the rational basis test is appropriate for analyzing petitioner's claim of selective or discriminatory prosecution. *Rodriguez,* 411 U.S. at 44, 93 S.Ct. at 1302. The California Court of Appeal, in denying petitioner's claim, cogently explained the rational basis for prosecuting petitioner on a felony charge:

> Like civilians, police officers are required to refrain from committing crimes. Unlike civilians, they are also expected to prevent others from committing crimes, to assist in the investigation of crime, and to use their law enforcement authority to maintain the trust of the public in its criminal justice system. [¶] [The petitioner] failed to discharge those obligations when he joined the pyramid and recruited new members for it. As a result, he is morally culpable to a greater extent than the civilian participants in the endless chain scheme. This provides a rational basis for the decision to prosecute [petitioner] on a felony charge.... [¶] Deterrence provides yet another legitimate, rational basis for distinguishing among potential defendants in charging decisions....

*Owens,* 59 Cal.App.4th at 802–03, 69 Cal. Rptr.2d at 430–31 (citations omitted).

This Court also finds that the prosecution of petitioner, a police officer, on a felony charge (rather than a misdemeanor charge) bears a rational relationship to a number of legitimate governmental purposes. As found by the California Court of Appeal, such prosecution serves to maintain the public trust in police officers, the maintenance of police discipline, the deterrence of other public safety officers from abusing positions of power, and the desire to punish those who have failed in fulfilling their duty and obligation to prevent crime. *Cf. Lee,* 786 F.2d at 958 (holding distinction between military and civilian personnel was neither an "unjustifiable standard" nor an "arbitrary classification," but instead an acknowledgment of the military's special status and need for discipline).

Thus, the California courts' denial of this claim is neither contrary to, nor an unreasonable application of, federal law as established by the United States Supreme Court. 28 U.S.C. § 2244(d).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing and the action with prejudice.

Feb. 2, 1999.